**UNITED STATES of America, Plaintiff,**

v.

**Juval AVIV, Defendant.**

**No. 95 Cr. 386 (LLS).**

United States District Court,
S.D. New York.

April 22, 1996.

Christine H. Chung, U.S. Attorney's Office, Southern District of New York, New York City, for plaintiff.

Gerald L. Shargel, New York City, for defendant.

## MEMORANDUM AND ORDER

STANTON, District Judge.

Defendant Juval Aviv moves for reconsideration of this court's decision and order dated February 5, 1996, denying his motion to dismiss the indictment on selective prosecution grounds. He states that he did not make sufficiently clear that he was asserting not only claims of selective, but also of vindictive, prosecution.

Aviv, a private investigator, asserts that this prosecution, on charges he submitted a fraudulent report to General Electric Capital Corporation ("GECC"), was commenced in retaliation for his public statements that the United States government was responsible in part for the bombing of Pan Am flight 103 over Lockerbie, Scotland.

He seeks dismissal of the indictment, an evidentiary hearing or discovery.

Reconsideration is granted, to deal separately with his claim of vindictive prosecution.

### DISCUSSION

A prosecution is vindictive if it is undertaken in retaliation for the exercise of a statutory or constitutional right. *E.g., United States v. Cyprian*, 23 F.3d 1189, 1196 (7th Cir.1994).

A defendant claiming vindictive prosecution must show that (1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a "stalking horse," *see id.; United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir.1989); and (2) he would not have been prosecuted except for the animus. *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056–57 (6th Cir.

1996); *United States v. P.H.E., Inc.*, 965 F.2d 848, 860 (10th Cir.1992).

■ To obtain discovery, the defendant must show a "colorable basis" for the claim. To obtain a hearing, the defendant must "raise a reasonable doubt that the government acted properly in seeking the indictment." *United States v. Benson*, 941 F.2d 598, 611 (7th Cir.1991). Both standards require the defendant to offer some evidence supporting both elements of the claim. *See id.; United States v. Goulding*, 26 F.3d 656, 662 (7th Cir.1994); *Adams*, 870 F.2d at 1146.

■ Aviv has made an unusually strong showing on the first element. He points out that the FBI agent in charge of the case is Special Agent David Edwards, the same agent who was responsible for a grand jury investigation of several of the key figures in Pan Am's defense against a civil suit brought by families of the Lockerbie victims. Agent Edwards' involvement, Aviv argues, suggests a connection between the Pan Am case and the instant indictment which the government should be required to explain.

Aviv also submits evidence that FBI and DEA agents interfered with an investigation of convicted banker Jacobo Finkielstain which Aviv had undertaken on behalf of the FDIC. Aviv points to an affidavit submitted by Finkielstain's attorney in an unrelated proceeding in which she asserts that FBI Agent Tim Childs visited Finkielstain in prison and told him he was being interviewed in connection with an FBI investigation of Aviv. According to Finkielstain, Agent Childs asked whether he had any bank accounts in Liechtenstein. Aviv asserts that Agent Childs' questioning gave Finkielstain notice that Aviv had succeeded in locating foreign assets and enabled him to move them.

Aviv learned from FDIC official John Brown that FBI Agent Chris Murray and DEA Agent Ed McCloskey called and visited Brown and Claude Hall, another FDIC official, and told them that Aviv was under grand jury investigation because of the Pan Am case. The two agents allegedly called

Aviv dishonest, unreliable and unpatriotic, asked for information regarding all matters on which Aviv was doing work for the FDIC and suggested that the FDIC terminate its relationship with him. Initially, Aviv's attorney Gerald Shargel states, Brown discussed his dealings with the agents with Shargel, but later said he could not do so because his supervisor refused to allow it.

However, and this is fatal to his claim, Aviv has not made any showing that he would not have been prosecuted even in the absence of the vindictive motive. He argues that reported Second Circuit mail and wire fraud decisions show that those prosecutions involved amounts far greater than the $20,000 at issue in this case. But there is a legitimate view that the goal of this alleged fraud was much more than $20,000: the government argues that Aviv submitted the false report (for which GECC paid $20,000) in order to obtain much more lucrative work, involving over $100,000, from GECC. Moreover, reported appellate decisions are not representative of all prosecuted mail and wire fraud cases because they do not include cases disposed of before trial, nor cases in which the defendant is acquitted or decides not to appeal.

Aviv's attorney's anecdotal statement that he has never, in over 25 years of criminal practice, "seen the resources of the FBI and the U.S. Attorney's Office devoted to such an insignificant, inconsequential, isolated, four-year-old contract matter," (Shargel Aff. ¶ 46), is insufficient to make out a *prima facie* showing of disparate treatment. *See United States v. Fares*, 978 F.2d 52, 59 (2nd Cir. 1992) (attorney's unsupported belief not sufficient to warrant discovery).

Aviv's evidence does not show that the government has declined to prosecute persons similarly situated to Aviv. *Contrast Adams*, 870 F.2d at 1146 (defendant submitted affidavit of former IRS employee, who stated that criminal proceedings are not normally brought against persons like the defendant who underreport their income and then voluntarily amend their returns and pay the

deficiency; defendant entitled to obtain discovery).

On the contrary, the government has submitted evidence that in 1995 the Southern District of New York's United States Attorneys's Office commenced at least two dozen cases involving mail fraud, bank fraud and credit card fraud in the amount of $25,000 or less. (*See* Chung Aff. dated October 2, 1995, ¶¶ 2–3.) Aviv contends that those cases involved more immediate injury either to the victim or to a public interest. But the analysis is not so refined: it does not extend to analyzing why each of the other cases was prosecuted. Undertaking such an examination is not justified when the only issue is whether to allow a trial of the .merits to proceed. For that purpose, it is sufficient that the relatively small amount involved did not prevent those cases from being brought.

Because there is no objective showing that the prosecution would not have been brought even in the absence of vindictiveness, Aviv's showing of vindictiveness is insufficient to obtain discovery, a hearing or dismissal of the indictment.

## CONCLUSION

Aviv's motion for reconsideration is granted. On reconsideration, the court adheres to its denial of the motion.