OPINION OF THE COURT
William F. O’Brien, III, J.
Petitioner Clinton R. Hill commenced this CPLR article 78 action by verified petition seeking to vacate the written decision of Oneida City Court (Eppolito, J.; 194 Misc 2d 347 [2002]), dated December 10, 2002; to enjoin any further prosecution of petitioner under the pending Oneida City Court information in People v Hill (Oneida City Ct, Docket No. 2002-13636); and to *617 dismiss the City Court information. Respondent Anthony P. Eppolito, named in his capacity as Oneida City Court Judge, has not appeared in this matter and offers no opposition to the verified petition. Respondent Madison County District Attorney Donald F. Cerio, Jr., submitted a verified answer opposing the relief requested in the verified petition. Additionally, the Oneida Indian Nation, of which petitioner is a member, was granted permission to file a brief as amicus curiae.
Statement of Facts/Procedural History
Petitioner is a Native American and a member of the Oneida Indian Nation (hereinafter Nation). On July 7, 2002, the petitioner was involved in an incident on Nation territory that lies within the physical boundaries of the City of Oneida. Petitioner is alleged to have intentionally bumped a female Nation member with his stomach several times, causing the female Nation member to fall back into her mother and causing the mother to fall.
Based upon this incident, a criminal information was issued in Oneida City Court (hereinafter City Court) on July 11, 2002, charging petitioner with harassment in the second degree. Petitioner was arraigned July 19, 2002, and pleaded not guilty. At the request of petitioner’s counsel, the case was adjourned to August 15, 2002, to allow for the filing of pretrial motions.
Meanwhile, petitioner was charged in Oneida Indian Tribal Court (hereinafter Tribal Court) on July 30, 2002, with assault in the third degree, harassment in the second degree and disorderly conduct based upon the events of the July 7 incident. Upon arraignment in Tribal Court, petitioner pleaded not guilty and requested a jury trial. A jury trial was commenced on August 7, 2002, and a jury was impaneled. On August 8, 2002, Tribal Court (Stewart F. Hancock, Jr., J.) issued a judgment of acquittal on the charges of assault and harassment, and the disorderly conduct charge was adjourned in contemplation of dismissal since the alleged victim and her mother failed to appear to testify, despite being subpoenaed by Tribal Court.
Petitioner then moved in Oneida City Court for dismissal of the harassment in the second degree charge, arguing that state court prosecution of the offense was barred by the double jeopardy provisions of article I, § 6 of the New York Constitution and Criminal Procedure Law §§ 40.20 and 40.30. By written decision dated December 10, 2002, City Court denied petitioner’s motion to dismiss, holding that petitioner was not previ *618 ously prosecuted under CPL 40.30 because Tribal Court is not a court of any jurisdiction within the United States.
Relevant Law/Analysis
Reading the petition broadly, it contends that the City Court decision of December 10, 2002 is a determination affected by an error of law and was an abuse of discretion and that respondents are about to act without their jurisdiction by continuing to prosecute petitioner. To determine whether a court has exceeded its authorized jurisdiction, the reviewing court may weigh factors such as the gravity of the harm caused by the unauthorized act, whether the harm may be adequately corrected on appeal or by recourse to ordinary proceedings at law or in equity and whether prohibition would furnish a more complete and efficacious remedy even when other methods of redress are technically available. (Brown v Schulman, 245 AD2d 561, 562 [2d Dept 1997], lv denied 91 NY2d 814 [1998].) A CPLR article 78 proceeding in the nature of prohibition is an appropriate vehicle by which to raise the bar of double jeopardy against further criminal prosecution. (Northrup v Relin, 197 AD2d 228, 231 [4th Dept 1994].)
Although the verified petition asserts that City Court’s decision to deny petitioner’s motion to dismiss exceeded its authorized jurisdiction and was an abuse of discretion, the essence of petitioner’s cause of action is that the decision was affected by an error of law in holding that the City Court prosecution did not violate the double jeopardy provisions of the New York Constitution and CPL 40.30.
By way of background, New York State has codified the protection afforded by the Fifth Amendment of the US Constitution that no “person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.” (See NY Const, art I, § 6; CPL 40.10-40.30.) Of greatest relevance to the present case is CPL 40.30 (1), which provides that
“a person ‘is prosecuted’ for an offense, within the meaning of [CPL] section 40.20, when he is charged therewith by an accusatory instrument filed in a court of this state or in any jurisdiction within the United States, and when the action * * * [p]roceeds to the trial stage and a jury has been impaneled and sworn in * * (Emphasis added.)
Thus, according to the theory argued by petitioner in his motion to dismiss the City Court information, CPL 40.30 prohibits his prosecution in City Court because he had already proceeded *619 to trial, with a jury impaneled, in Tribal Court, which is a court of a “jurisdiction within the United States.” Respondent City Court Judge ruled against petitioner, holding that the Oneida Nation is not a “jurisdiction within the United States” for the purpose of interpreting CPL 40.30 (1).
City Court reached its holding after a detailed review of double jeopardy law in New York, a discussion of the nature of tribal sovereignty in New York case law at the time that CPL 40.30 was enacted, and an extended discussion of principles of statutory construction. Specifically, City Court noted a lack of legislative history to otherwise aid in defining the phrase “jurisdiction within the United States” and instead pointed to case law indicating that at the time CPL 40.30 was enacted, Indian nations held “quasi-sovereign” status and were not land under the jurisdiction of the United States. City Court concluded that the Legislature did not recognize or anticipate Indian tribes as “political entities ‘existing within the United States’ ” at the time CPL 40.30 took effect (194 Misc 2d at 353).
Based upon this premise, City Court ultimately concluded that the Legislature regarded the Indian nations as extraterritorial entities that ultimately did not qualify as jurisdictions within the United States. In so doing, City Court openly dismissed the theory that the phrase “any jurisdiction within the United States” should be read as encompassing all “jurisdictions” geographically located within the borders of the United States, calling the argument “overly simplistic” (194 Misc 2d at 354). City Court further asserted that “the doctrine of separate sovereigns does still apply in these proceedings” (at 354).
City Court undertook its analysis of legislative intent after determining that no case law existed that answered the question presented regarding the meaning of the key phrase in the statute. In doing so, City Court noted the Court of Appeals decision in Booth v Clary, which held that a military court-martial tribunal is a court within the meaning of CPL 40.30 (1) and that prior prosecutions therein would constitute a double jeopardy bar to state prosecutions. (Booth v Clary, 83 NY2d 675, 680 [1994].) City Court determined that Booth had no precedential value to the present case because its holding was premised upon the findings that (1) court-martial adjudications were akin to state court felony convictions for purposes of establishing second felony offender status, and (2) military tribunals were the equivalent of federal district courts for the purposes of CPL 40.30 analysis because the military tribunal, *620 like federal court, “exerts all its ‘powers under and by the authority of the same government — that of the United States’.” (Booth v Clary, supra at 679.)
Petitioner advances three theories of error in the City Court decision: (1) City Court erred by failing to apply a plain reading of the key term in the statute, “any jurisdiction within the United States”; (2) City Court reached an erroneous conclusion by determining, without any support from legislative history, that the New York State Legislature regarded Indian tribes as extraterritorial, foreign nations and thus not “within the United States” at the time CPL 40.30 was enacted; and (3) City Court’s decision is in error generally because it “undermines the Oneida Nation’s authority to govern its internal affairs.”
Petitioner’s “plain reading” argument was properly rejected by City Court. The Booth case is ample evidence that the plain language of the statute’s key phrase is not so clear as to avoid the possibility of multiple interpretations. Restricting the meaning of “any jurisdiction within the United States” to consider only the geographic boundaries of the Nation ignores the anomalous nature of institutions such as military tribunals and tribal courts whose sources of power owe to entities beyond the concept of geographic location. As such, City Court properly engaged in a more probing inquiry of whether Tribal Court constitutes a court of a jurisdiction within the United States as described in CPL 40.30 (1).
However, City Court’s analysis failed to recognize an aspect of the Booth decision which is important to structuring a proper analysis of the question. Having acknowledged the applicability of New York’s broader double jeopardy protections arising from both statute and case law, the Booth Court examined the nature of military tribunals and the source of their enabling authority in order to determine whether the Legislature intended to include them within the ambit of the state’s extended double jeopardy protections. (Booth v Clary, supra at 679-680.) Specifically, Booth discussed the source of the military tribunal’s authority — the federal government — in drawing the analogy between the military tribunal and federal district court for purpose of evaluating the preclusive effect of its judgment on future state prosecutions. (Id. at 679.)
With this analysis, the Court of Appeals instructed on factors which are relevant to the question at hand and provided a valuable framework upon which the present circumstances must be evaluated. Despite the fact that the issues in Booth *621 are not on all fours with the details of petitioner’s case, Booth is controlling here to the extent that the Court of Appeals had set forth the parameters for interpretation of CPL 40.30. Thus, it is appropriate to apply the relevant factors established by Booth to the present case.
Tribal Court derives its authority to prosecute specific offenses occurring between tribe members from the Oneida Nation, which is a federally-recognized Indian nation that is located within New York State and the United States. Despite having long since surrendered “the full attributes of sovereignty,” Indian nations such as the Oneida Nation did retain and continue to hold a right of self-government inherent in such a “unique aggregation” of people. (United States v Wheeler, 435 US 313, 323 [1978].) Thus, an Indian tribe’s power to punish tribal offenders springs from its status as a separate sovereign for purposes of self-government. (Id. at 328.)
In this respect, much in the same way that the Booth Court found military tribunals to be empowered by the authority of the federal government, Indian nations are no different than states, inasmuch as they are free to adopt laws and regulations independent of any outside influence. The well-settled principle that the courts of other states are included within the courts of “any jurisdiction within the United States” also lends support to the idea that Tribal Court should be included in the courts described in CPL 40.30 (1).
Such a finding is not wholly inconsistent with the reasoning employed by City Court, which based its decision upon the finding that the Legislature did not view Indian nations as “jurisdictions” when drafting CPL 40.30. City Court cited case law suggesting that Indian tribes were viewed as “quasi-foreign nations” and that New York had jurisdiction over the person and property of Indian tribes. Neither of these concepts limited the right of Indian self-government, which forms the basis for whatever sovereignty may still have been asserted by Indian nations at the time CPL 40.30 was enacted. As Wheeler explained some eight years later, “the power to punish offenses against tribal law committed by [t]ribe members * * * has never been taken away from them.” (United States v Wheeler, supra at 328.) Wheeler based this finding, in part, upon Talton v Mayes (163 US 376), which was decided in 1895 and laid the foundation for the notion that Indian tribes retained self-governmental sovereignty some 75 years before CPL 40.30 was enacted by the New York State Legislature.
It is further noteworthy that, despite the urging of respondent District Attorney and City Court’s decision on the matter, *622 the doctrine of “dual sovereignty,” or “separate sovereigns” is not viable under New York jurisprudence. Aside from the language of CPL 40.20 and 40.30 itself, the Court of Appeals has repeatedly determined that the double jeopardy protections offered by these statutes “offer [s] more protection than the ‘dual sovereign’ doctrine would tolerate.” (Booth v Clary, supra at 679, citing People v Abbamonte, 43 NY2d 74, 81 [1977].) No precedent has been found or cited by counsel to contravene the Court of Appeals statement in this regard.
Accordingly, for the reasons set forth herein, the relief requested in the petition is granted. The decision of Oneida City Court issued under Docket No. 2002-13636, dated December 10, 2002, is hereby vacated as being a determination affected by an error of law pursuant to CPLR 7803 (3).